# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| In re:<br><br>    Dorothy DuCharme a/k/a<br>    Dorothy Ducharme,<br>                Debtor. | Filed & Entered<br>On Docket<br>October 2, 2008 | Chapter 7 Case<br># 06-10154 |
| In re:<br><br>    Tammy J. Cusson<br>                Debtor. | | Chapter 7 Case<br># 06-10195 |

Appearances:    John C. Gravel, Esq.                                        Michael Carver, Esq.
                             Bauer, Gravel, et al.                                      Greene, Seaver & Carver, P.C.
                             Burlington, VT                                            Burlington, VT
                             Attorney for Debtors                                  Attorney for Creditor

## ORDER
### DENYING CREDITOR'S MOTION FOR A STAY PENDING APPEAL

On September 15, 2008, James Naylor individually and doing business as Naylor Construction (hereafter, the "Creditor") filed a motion for a stay pending appeal[1] (doc. # 76 in DuCharme case, doc. # 74 in Cusson case) of this Court's July 21, 2008 Order which avoided the Creditor's lien on the ground that it was a judicial lien that impaired the Debtors' homestead exemption (doc. # 63 in DuCharme, doc. # 61 in Cusson).

### The Burden of Proof and Criteria to be Demonstrated

A motion for a stay pending appeal "is an extraordinary remedy and requires a substantial showing on the part of the movant." In re Lickman, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003). The Bankruptcy Code provides that the filing of an appeal "does not stay any proceeding of the bankruptcy court. . . from which the appeal is taken, unless the respective bankruptcy court . . .in which  the appeal is pending[] issues a stay of such proceeding pending the appeal." 28 U.S.C. § 158(d)(2)(D). The four factors a court must take into account when considering whether to grant a stay pending appeal are: "(1) whether the stay applicant has

---

[1] Prior to filing the motion for relief from stay of the July 21, 2008 Order in this Court, the Creditor filed a motion for a stay of that Order in the U.S. District Court. On September 2, 2008, the District Court issued an Order denying Creditor's motion for a stay, instructing that, under Federal Rule of Bankruptcy Procedure 8005, such a motion should ordinarily be presented to the bankruptcy judge in the first instance, and if made first to the district court, must show why the relief was not obtained by the bankruptcy judge. Finding that the Creditor "fails to provide a valid reason for failure to file a request in bankruptcy court," the district court denied the motion without prejudice and stated that the Creditor had leave to file the request for a stay directly to the bankruptcy court (doc. # 74 in DuCharme, doc. # 72 in Cusson). The Creditor complied by filing the instant motion for a stay in this Court.

1

made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The Second Circuit has "also noted that the degree to which a factor must be present varies with the strength of the other factors, meaning that 'the more of one [factor] excuses less of the other.'" Id. (quoting Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006)).

## The Parties' Arguments

The Creditor asserts that he made the motion because the Debtors' attorney

> has filed a copy of this Court's order dated July 21, 2008 purporting to avoid Naylor's lien in the Winooski land records exposing Naylor thereby to the risk of irreparable harm. Any title examiner who does not make further inquiries concerning this matter could erroneously conclude that Naylor's claim against the subject property has been obliterated and the real estate representing the only security held by Naylor securing what is owed him could be sold to third parties and despite any subsequent reversal of this Court's rulings in this matter, all recovery by Naylor will be forever lost.

(doc. # 76, doc. # 74). He also claims that: (1) he will win on the merits regarding the lien issue because the Bankruptcy Court "has no power to construe exemptions on any date other than the date of the debtor's petition and therefore the relief granted this debtor to avoid Naylor's statutory lien is forbidden by indisputable law"; (2) the Debtors have been permitted to remain in the property throughout the proceedings and will be able to continue to do so until a final foreclosure decree has been obtained, so therefore maintaining the status quo by issuing a stay will not be prejudicial to the Debtors; and (3) public policy is served by the stay because "[i]f the property representing the sole security to a contractor is liquidated as a result of a bankruptcy court's order that is contrary to law before such contractor is able under the law to seek the foreclosure of a final judgment issued to him, when it is finally issued to him, despite a subsequent reversal of that order, irreparable harm to the rule of law will result and the public's vested interest in same will likewise be irreparably harmed." Id.

The Debtors filed papers in opposition to the Creditor's motion (doc. # 77 in DuCharme, doc. # 75 in Cusson), asserting that the Creditor has not satisfied the four criteria for requesting a stay pending appeal. Addressing the first factor of the stay test which focuses on the merits of the case, the Debtors argue that the Creditor did not have a valid contractor's lien because he failed to record his Judgment Order pursuant to 9 V.S.A. § 1924, the Creditor's debt was discharged in each of the bankruptcy cases without objection, and therefore the Creditor has no lien or judgment to assert against the Debtors' real estate. Further, they claim that the Creditor's argument that the Debtors' motion to have the exemptions determined after filing their petitions is irrelevant as all motions to avoid liens are made after the bankruptcy petition is filed and the

2

motion was granted using valuations in effect on the date of filing. The Debtors rely particularly on the undisputed fact that at the time they each filed their bankruptcy petitions, the Creditor's contractor's lien was not fully perfected pursuant to state law and that is a sufficient basis to avoid it. Id.

With respect to irreparable harm, the Debtors counter the Creditor's argument by stating that they have no intention of selling their home, and they have placed $20,000 (the full amount of the contractor's lien) in escrow "to be applied to the payment of Naylor's contractor's lien, if and when said contractor's lien is finally determined to be valid," and therefore the Creditor would suffer no irreparable harm. Id.

As to the prong focused on the potential harm a stay would cause other parties, the Debtors contend that they would suffer substantial harm if a stay was granted because they have been struggling with a high interest rate mortgage and would be severely prejudiced if they are not allowed to refinance the mortgage. While they acknowledge that they do not know if refinancing would even be possible during the pendency of the appeal, they presume a stay would impede their chances of refinancing and characterize this outcome as so prejudicial as to constitute irreparable harm. Id.

Finally, with respect to the fourth stay factor, the Debtors state that a stay would harm the public interest because the Bankruptcy Code is intended to provide debtors with a fresh start. To apply a stay to a well-reasoned bankruptcy court decision on the basis of unreasoned arguments obstructs the Debtors' ability to reduce their debt through a refinance and flies in the face of that fresh start public policy. Id.

### **The Court's Analysis**

The Court has carefully considered the arguments of both parties and concludes that the Creditor has failed to establish the requisite criteria to warrant the granting of a stay pending appeal under Bankruptcy Rule 8005.

With regard to the first stay factor, whether the Creditor has made a strong showing that he is likely to succeed on the merits, the Court finds that this factor favors the Debtors. The determinative question is whether the Creditor had a valid lien against the Debtors' property. The Court held that although the Creditor obtained and perfected his lien, that lien expired because he never filed a certified copy of the state court judgment within five months as required by 9 V.S.A. § 1924. The Creditor explained that he had not done so because the state court judgment was not a "final judgment" and the finality requirement of 12 V.S.A. § 2904 was to be read into the contractor's lien statute.

The Creditor's theory is intriguing, and there is no Vermont state court jurisprudence on point that either specifically supports or rejects his unique legal theory. However, the Second Circuit Bankruptcy Appellate Panel and this Court have interpreted the Vermont contractor's lien statutes in other cases, and both have held that a state court judgment regarding a contractor's lien award is "not required to be either final or

3

contain a notation as to the date of its finality" when recorded. Official Unsecured Creditors Comm. of the Rainbow Trust v. Moulton Constr., Inc. (In re the Rainbow Trust), 216 B.R. 77, 83 n.5 (2d Cir. BAP 1997); In re Ahokas, 361 B.R. 54, 65 n.9 (Bankr. D.Vt. 2007). Moreover, this Court articulated a number of other reasons why the Creditor's statutory construction of §§ 1924 and 2904 must fail. The extent and nature of those arguments persuade this Court that this factor weighs in favor of the Debtors. In addition, the Court agrees with the Debtors that the content of the Creditor's argument on the likelihood of success prong is largely focused on factors which are irrelevant. Consequently, the Court finds that the Creditor has not met his burden of making a strong showing that he is likely to succeed on the merits, in the appeal.

    The next prong of the stay analysis is whether the stay applicant will be irreparably harmed absent the granting of a stay. "A showing of probable irreparable harm is the principal prerequisite for the issuance of a stay. Under that test, the moving party must demonstrate that such injury is likely before the other requirements will be considered." In re City of Bridgeport, 132 B.R. 81, 83 (Bankr. D.Conn. 1991). The applicant generally must show that legal remedies (i.e., money damages) are inadequate to protect it during the pendency of the appeal. See, e.g., Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); In re Hamilton, 95 B.R. 564, 565 (N.D. Ill. 1989). "The irreparable harm must be neither remote nor speculative, but actual and imminent. Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough." Lickman, 301 B.R. at 748 (quotation marks and citations omitted). Accord City of Bridgeport, 132 B.R. at 83.

    The question presented is what irreparable harm the Creditor will suffer, in the absence of a stay, between now and the date the district court rules on the appeal. The Creditor is concerned that the property may be sold and parties will rely on the July 21, 2008 Order in the Winooski land records to disburse funds without paying him. The state court judgment of $42,594.02 in damages (based upon breach of contract and the Prompt Payment Act, plus interest and penalties) significantly exceeds the $20,000 that the Debtors have placed in escrow. The house is likely the only source from which the Creditor might recover funds to satisfy the judgment, if he proves successful, and the escrow monies would not cover even half of the sum to which the Creditor believes he is entitled. If the house is sold, the Creditor would have lost his primary (and perhaps sole) source for recovery of his debt. While the Creditor has raised a legitimate concern, he does not assert that any irreparable harm is imminent: he says only that he is "expos[ed] to the risk" of irreparable harm, which does not satisfy the stay requirement of imminence. He "has presented no evidence that transfer, sale, or encumbrance of the assets is imminent. [He] has not shown that [Debtors have] entered into any agreement, or [are] seeking to enter into any agreement, to sell" the property. Datapak Assocs., Inc. v. Hoynash, 2004 WL 2290507 * 2 (S.D.N.Y. Oct. 8, 2004). Speculative and "conclusory statements are an insufficient foundation on which to find irreparable harm." Id. Counsel for the Debtors represents that the Debtors have

4

"no intention of selling" their home (doc. # 77). Moreover, the anticipated injury here is, essentially, monetary, which is not by its nature irreparable for purposes of determining whether a party is entitled to stay pending appeal of bankruptcy court order. In re Drislor Assocs., 110 B.R. 937, 939 (D.Colo. 1990). Accordingly, the Court finds that the Creditor has not established the "irreparable harm" element of the stay test.

The third prong of the stay test is "whether issuance of the stay will substantially injure the other parties interested in the proceeding." WTC Disaster Site Litig., 503 F.3d at 170. The Creditor has established this component of the test. The fact that the Debtors may remain in the property indicates that they will suffer no dislocation. Further, the Court does not find the Debtors' argument – that they would be harmed because they might not be able to refinance during this period – to be persuasive. First, they admit that their concern is speculative ("[Debtors] do[ ] not know if refinancing would be possible during the pendency of the appeal, but to preclude that opportunity would indeed constitute irreparable harm"). It is also conclusory. Third, the Court is not convinced that their chances of obtaining a refinance would be helped by the granting a stay since the matter is on appeal. In any event, the Debtors would be required to disclose to a bank that the matter is on appeal (and thus that a cloud still hangs over the title). That information, more than a stay, would seem to have more impact on whether the Debtors would be able to secure refinancing.

Courts have found, with respect to the public interest prong of the test, that granting a stay frustrates the operation of the Code, and thus the public interest. See In re Richmond Metal Finishers, Inc., 36 B.R. 270, 273 (Bankr. E.D. Va. 1984) ("If there is a public interest in this matter, it is seeing that the purposes and policies of the Bankruptcy Code are not frustrated, particularly the underlying policy of bankruptcy law to help reorganize debtors and provide a 'fresh start.' In this regard any 'public interest' weighs against granting the stay."). While this prong is the least influential in the Court's determination of whether to grant a stay in this case, to the extent it must be considered, the Court finds it weighs in favor of the Debtors and that the Creditor has not met his burden on this prong.

## **Conclusion**

In sum, the Court finds that the Creditor has failed to establish the first, second, and fourth required criteria for a stay pending appeal. Success on the third prong alone is not sufficient to warrant a stay. In denying the stay, the Court is relying in part on the Debtors' representation that they do not intend to sell their homestead property and that they will preserve their escrow fund while the appeal is pending. While the Court understands the Creditor's concern about a possible sale, fear of a sale does not make a sale imminent and imminent irreparable harm is the standard this Court must apply.

For these reasons, the Court denies the Creditor's motion for a stay pending appeal.

5

SO ORDERED.

October 2, 2008  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge